EARL KIMBEL, doing business under the name and style of Earl Kimbel Trucking Company,

*Plaintiff and Appellant,*

v.

J. W. OSBORN, also known as JAMES WILLIAM OSBORN, doing business under the name and style of OSBORN DRILLING COMPANY, and JAMES VAN ETTA,

*Defendants and Respondents.*

(No. 2295; Feb. 26, 1945; 156 P. 2d 279)

For the plaintiff and appellant the cause was submitted on the brief of *S. S. C. Chilcote* and *Charles L. Brome,* both of Basin, Wyoming.

For the defendants and respondents the cause was submitted on the brief of *E. J. Goppert* and *Milward L. Simpson,* both of Cody, Wyoming, and oral argument by *Mr. Goppert.*

## OPINION

RINER, Justice.

The question to be disposed of in this cause now here on direct appeal is whether the District Court of Big Horn County was in error in making an order vacating a judgment in said cause theretofore entered by the Clerk of that Court, this action being taken by that official under the authority of Section 89-1207, W. R. S. 1931. The facts material to be considered are these:

Earl Kimbel, doing business under the name and style of Earl Kimbel Trucking Company, appellant here and plaintiff below brought an action in the Court above mentioned against J. W. Osborn, engaged in business as the Osborn Drilling Company, and James Van Etta as defendants now respondents. The petition in the action was filed January 12, 1943, and embodied two alleged causes of action which we may briefly summarize. The first cause of action, after setting out that the defendants, "prior to May 21, 1942, up to and including a time subsequent to June 20, 1942", united in a joint adventure for the production of oil and gas from certain real estate, averred that between May 21, and June 20, 1942, the plaintiff, upon the promise of the defendants "to pay the stipulated prices therefor, which were the agreed and reasonable values therefor", performed certain labor and services

and furnished materials in connection with the constructing and repairing of an oil well known as Van Etta No. 1, and also oil well derricks located upon certain premises specifically described; that the services thus performed for and materials used in this enterprise "were of the reasonable worth and value" of $1855.22, in accord with the statement of account attached to and made a part of the pleading and that no part of this sum has been paid, which amount plaintiff claims of defendants and each of them with interest.

The second cause of action repeats the allegations contained in the first cause of action and then states that a notice and claim of lien upon certain listed real estate and personal property located thereon had been duly filed in the County Clerk's office of Big Horn County, July 17, 1942, by plaintiff, in the amount mentioned above, to-wit, the sum of $1855.22, and a copy of said notice and claim of lien is attached to and made a part of the pleading. It is also alleged that the labor, services and the furnishing of material, aforesaid, were commenced by plaintiff, May 21, 1942; that the defendant Van Etta, duly filed in said County Clerk's office on June 3, 1942, a chattel mortgage upon the personal property upon which plaintiff claims a lien as hereinbefore stated in which instrument the defendant, J. W. Osborn, is named as mortgagor and the defendant Van Etta, as mortgagee; that plaintiff's claim and notice of lien was filed at 9:15 a. m., the 17th day of July, 1942, and that about 10:00 a. m., of that day, at foreclosure sale, Van Etta purchased said personal property and now claims to be the owner thereof; that the lien of this mortgage was and is subordinate to plaintiff's claim of lien aforesaid; that the defendant Van Etta owns an oil and gas lease of the premises referred to above entered into between the owner of the

land and Van Etta which granted him the right to mine for "oil and/or gas" and to lay pipe lines and erect structures on the property; that Van Etta assigned a 27½ per centum interest in said lease to said Osborn.

Plaintiff's petition prayed that he recover on his first cause of action a personal judgment against the defendants in the sum of $1855.22, with legal interest, $2.00 as costs of recording the notice and claim of lien and also costs of suit; that he be adjudged to have a lien upon the personal property aforesaid and also upon the 27½ per centum interest in said lease; that this personal property, including also the last mentioned interest in said lease, be sold to satisfy plaintiff's lien and the proceeds applied thereon; that if the proceeds were insufficient to pay plaintiff's claim that he have a deficiency judgment against each of said defendants; and that defendants' claim, or that of anyone claiming under them to said personal property and 27½ per centum interest, be decreed to be subordinate to plaintiff's claim and lien.

Upon the filing of this pleading summons was issued and returned by the Sheriff of Big Horn County unserved because neither of the defendants "is a resident of my county and neither of them can be found" therein.

February 5, 1943, plaintiff filed affidavits for constructive service of process on said defendants without this state; February 16, following, plaintiff filed an additional affidavit of his counsel stated to be "made and filed in order that plaintiff may obtain service on the defendants and each of them by publication as provided by law".

March 18, 1943, there was filed by plaintiff an affidavit supplying proof of publication of a notice of pen-

dency of the action aforesaid setting out its purpose as described above and calling on the defendants to answer plaintiff's petition on or before March 27, 1943. The same day one of counsel for plaintiff filed an affidavit of prejudice against the presiding Judge of the District Court aforesaid.

The defendant Van Etta on April 13, 1943, appeared specially by counsel for the sole purpose of objecting to the Court's jurisdiction and upon a number of grounds asked that the constructive service of process theretofore undertaken be quashed.

Three days later, to-wit, April 16, following, counsel for plaintiff filed another affidavit for "service outside the State of Wyoming", an alias summons was issued, the Sheriff of Big Horn County appointed the Deputy Sheriff of Spokane County, Washington, to serve a copy of this summons and the aforesaid petition upon the defendant Van Etta in the City of Spokane, in that state, pursuant to "Sections 89-809, 89-817, and 89-822, Wyoming Revised Statutes, 1931". An affidavit of this Deputy Sheriff is attached to said summons stating that he "served said copy of said summons and petition" on the defendant Van Etta in the City of Spokane, State of Washington, the 19th of April, 1943. This summons called upon Van Etta to answer the above described petition "on or before May 15, 1943".

May 10, 1943, Van Etta, by his counsel, filed another special appearance upon several grounds objecting to the Court's jurisdiction and again asking that this last described service of process be quashed.

After hearing had by an order entered June 23, 1943, a Judge other than the presiding Judge of the District Court of Big Horn County, sitting, the requests of the defendant Van Etta's two special appearances were denied.

June 24, 1943, an application to the Court was made by counsel for plaintiff for a default judgment against the defendant Osborn. July 13, following, a similar application was made for a default judgment against the defendant Van Etta. These applications appear not to have been presented to the Court at all.

One of counsel for plaintiff, on July 29, 1943, filed an affidavit stating, among other things, that it has been impossible to obtain service upon the defendants or either of them "within the State of Wyoming". The same day the Clerk of the District Court of Big Horn County, without the intervention or direction of the Court, entered a judgment against the defendants and each of them. In order to indicate the scope of this judgment it will now be briefly reviewed.

It recited that the attorneys for the plaintiff had, on July 29, 1943, made oral application for a default judgment against the above named defendants and each of them and "as provided by Section 89-1207, Wyoming Revised Statutes, 1931", the Clerk of the District Court of Big Horn County then found that constructive service had been had upon the defendant Osborn and that he was in default for failure to answer or otherwise plead within the time prescribed by law; that constructive service had also been made upon the defendant Van Etta and he had failed to plead or answer as required by law; that "personal service was made and had upon the said defendant James Van Etta at his residence at 2109 Southeast Boulevard, City of Spokane, State of Washington". The proceedings above described concerning the several special appearances of the defendant Van Etta are thereupon recited and it is found that as the time for pleading or answer by defendant has elapsed without any pleading being filed each of the defendants are declared to be in default.

It was thereupon "in accordance with said Section 89-1207", W. R. S. 1931, "adjudged and decreed" that plaintiff "do have and recover" from the defendants and each of them the full sum of $2004.85, "which said total judgment be and the same hereby is declared to be a first and superior lien against" all the personal property above referred to as described in plaintiff's petition and claim of lien; that "said judgment be and the same hereby is a first and superior lien against the $27\frac{1}{2}$ per centum interest" sold and assigned by the said Van Etta to the defendant Osborn as hereinbefore recited; that the defendants be "debarred from ever asserting any right, title, or interest in and to said personal property and said $27\frac{1}{2}\%$ interest" adverse to the claim and lien of the plaintiff in the total sum of $2004.85; that said plaintiff's lien be and "hereby is foreclosed", that a special execution may be issued in favor of plaintiff against the defendants and each of them and against said property and that it be levied upon said property by the Sheriff of Big Horn County, and said $27\frac{1}{2}\%$ interest and all of same be sold and that "due return on said execution be made by the aforesaid Sheriff as required by law". This judgment was entered on the Court's Journal, July 30, 1943.

November 30, 1943, the defendant Van Etta filed an answer to the plaintiff's petition denying all the allegations in that pleading and undertaking to raise a question as to the jurisdiction of the Court to proceed in the cause. Thereafter and on December 2, 1943, the plaintiff filed a motion to strike said answer from the court files on the ground that it was filed out of time when Van Etta was in default and when a default judgment had been theretofore entered at a former term of the District Court of Big Horn County, against him. December 9, 1943, the defendant Van Etta filed a motion to vacate the aforesaid judgment upon a number of stated grounds among which was that the Clerk

of the District Court of Big Horn County was without right or power to enter that judgment. These two motions were, on the date last mentioned, presented to the Court, a Judge sitting other than the presiding Judge of the District Court of said County and other than the official who ruled upon the several special appearances made to quash the alleged constructive service of process upon said Van Etta, and by order the motion to strike said answer was denied and that to vacate the aforesaid judgment was sustained, the Court finding that the Clerk of said Court erroneously and improperly entered said judgment and that defendant Van Etta was not in default when his answer was filed in the cause. To these findings and the order giving them effect plaintiff saved his exceptions and has brought that order and the record here for review as hereinbefore stated.

It will be observed from the description of the judgment given above that the Clerk of the District Court of Big Horn County undertook to render a personal judgment against the defendants and each of them notwithstanding that at the time the judgment was entered neither of these parties had been served with process within the State of Wyoming, the only service upon them being constructive in character and without the confines of this State. It is true that the judgment recited that "personal service" was had upon Van Etta at his residence in Spokane, Washington, but so far as the legal effect of such a service is concerned it merely "is the equivalent of and a substitute for constructive service effective to the same extent as publication but only to that extent". 50 C. J. 542-543 and cases cited.

Neither the Clerk thereof nor the District Court of Big Horn County itself was authorized upon such service to enter a personal judgment against the defendants herein or either of them. This is familiar law

to members of the legal profession. It is hardly necessary to refer to the leading case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, where, in the co-ordinate citation, Mr. Justice Field, who wrote the opinion, also prepared the head notes reflecting the purport of the decision. The second of these notes reads:

"A personal judgment rendered in a State Court, in an action upon a money demand against a nonresident of the State, without personal service of process upon him within the State or his appearance in the action upon service by publication is without any validity; and no title to property passes by a sale under an execution issued upon such a judgment."

Nearly fifty years later the same Court in Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091, said:

"The process of a court of one state cannot run into another and summon a party there domiciled to respond to proceedings against him. Notice sent outside the state to a non-resident is unavailing to give jurisdiction in an action against him personally for money recovery. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. There must be actual service within the state of notice upon him or upon some one authorized to accept service for him. Goldey v. Morning News, 156 U. S. 518, 15 S. Ct. 559, 39 L. Ed. 517. A personal judgment rendered against a nonresident, who has neither been served with process nor appeared in the suit, is without validity."

So far as we are advised these precedents still stand as yet. It is clear there was no personal appearance by either of the defendants in this cause until Van Etta filed his answer November 30, 1943. It follows therefore that the judgment, so far as it undertook to accomplish a personal one, was wholly void.

Referring again to the judgment aforesaid we have seen that it purports to adjudicate the priority of the lien claim of the plaintiff and the lien of said judgment as against the claim of the defendants and each

of them to the personal property above mentioned, to fix the lien of this judgment as a "first and superior lien against the 27½ per centum interest" sold and assigned by Van Etta to Osborn in the oil lease held by the former, to foreclose the plaintiff's filed claim of lien and to order both the personal property and the said 27½% interest thus transferred to Osborn sold to make satisfaction of the aggregate amount of the judgment in the sum of $2004.85.

The authority for the Clerk to do all this in a judgment entered by him without the intervention of the Court is asserted to be found in Section 89-1207, W. R. S. 1931, which reads:

"In an action upon an account, or written instrument or other contract, express or implied, for the payment of money only, or in foreclosure, judgment may be entered at any time during the term, after the defendant is in default for an answer, but the court may, for good cause shown, give further time for answer. After the expiration of such time for answer and the defendant's default, as herein specified, the clerk of the court shall, upon application of the plaintiff, or his attorney, in writing or orally enter judgment for the amount with interest specified in plaintiff's verified original petition, together with the costs of the action, and no other or further proof of plaintiff's claim shall be required in such case."

The history of this statute is somewhat interesting. The first sentence of that section which was borrowed from the Revised Statutes of Ohio, Section 5133, appeared in Revised Statutes of Wyoming, 1887, as Section 2520; it thus appeared in Revised Statutes of Wyoming, 1899, as Section 3607. Chapter 62 Laws of Wyoming, 1905, altered that sentence by adding several words and also added another complete sentence so that the statute read:

"In an action upon an account, or written instrument *or other contract, express or implied,* for the pay-

ment of money only, or in foreclosure, judgment may be entered at any time during the term, after the defendant is in default for an answer, but the court may, for good cause shown, give further time for answer. After the expiration of such time for answer and the defendant's default, as herein specified, the clerk of the court shall, upon application of the plaintiff, or his attorney, in writing or orally enter judgment for the amount with interest endorsed on the writ, and specified in plaintiff's verified petition, together with the costs of the action, and no other or further proof of plaintiff's claim shall be required in such case."

The additional words in the first sentence of the 1905 law have been italicized for convenience in showing its alteration. The 1905 law was thereafter carried forward verbatim in the Wyoming Compiled Statutes, 1910, and also Wyoming Compiled Statutes, 1920. In Laws of Wyoming, 1931, Ch. 73, Sec. 89, the first sentence of the law as enacted in 1905 was left unchanged. However, the second sentence was altered so that the words "endorsed on the writ and" were omitted and the word "original" was inserted before the word "petition", so that the statute in its entirety at present reads, as noted above from W. R. S. 1931, Section 89-1207.

It will be observed that, as the statute originally stood, the matter of entering a judgment by default was left in the hands of the Court and it is easy to understand why a default for failure to answer with following judgment could be properly entered in the actions listed and also "in foreclosure", for the Court could and would invoke its judicial powers and authority to reach a correct result and afford proper relief. However, when the additional sentence was affixed to this statute by the amendment of 1905 vesting authority in the Clerk to enter judgment without an application to the Court, it became and is necessary to ascertain what sort of function the Clerk in such case per-

forms and the nature of his action, what he may do and what he may not do.

So in Bertagnolli Brothers v. Bertagnolli, 23 Wyo. 228, 148 Pac. 374, decided in 1915 with the law of 1905, supra, before it this Court said with reference to the Clerk's authority thereunder that:

"It is generally held under such a statute that it directs the judgment to be entered and that the clerk acts merely in a ministerial capacity; and upon that ground the validity of statutes conferring such authority upon the clerk is upheld. (See Utah Assn. &c. v. Bowman, 38 Utah, 326, 113 Pac. 63, Ann. Cas. 1913B, 334.) The court in the case cited, speaking of this power of the clerk, say: 'This duty is imposed by law, and the clerk has no discretionary powers with repect thereto. His act in entering such a judgment is no more judicial or discretionary than his act in entering a judgment upon the verdict of a jury or the finding of the court would be. In either case the law imposes the duty, and in entering the judgment the clerk merely executes what the law requires of him.' Hence it must appear that any judgment so entered by the clerk was within the authority conferred by the statute, or otherwise the judgment will be void."

This Court's especially significant comment in the language quoted last above appears in the last sentence thereof. The opinion then supplies an excerpt from Freeman on Judgments as confirmatory of this view as follows:

"The clerk derives all his powers from the statute, and as they are special no intendments are to be made in support of his act, but in each case it must appear that what he did was within the authority conferred on him by the statute. * * * The question is, had he authority to enter the defendant's default, and thereupon judgment final against him as the case stood at that time?"

This language was taken by that learned author from the decision of the California Court in Providence Tool

Co. v. Prader, 32 Cal. 634, 91 Am. Dec. 598. The text then proceeds to express the view of the author which is also quoted by this Court in this wise:

"If this question is answered in the negative, or in other words, if the clerk had no authority to enter the default, or if, having authority to enter the default, he had no authority to enter judgment thereon, then any judgment entered by him without the direction of the court is void."

See 3 Freeman on Judgments (5th Ed.) Sec. 1283, p. 2667.

The California Courts in the numerous cases arising in that jurisdiction on this matter appear to have given the authority of the Clerk to act under a statute of this character as careful analysis as perhaps has been adjudicated elsewhere.

The well considered case of Landwehr v. Gillette, 174 Cal. 654, 163 Pac. 1018, will, we think, afford material assistance in the case at bar. That, as here, was an appeal from an order of the trial Court setting aside a judgment. The action was one upon a promisory note executed by one defendant and endorsed by the other defendants. The note provided in case of suit thereon "to pay such additional sum as the Court may adjudge reasonable as attorney's fees in said suit," and the complaint alleged that $500.00 was a reasonable attorney's fee and costs. The defendants were personally served with summons but made no appearance. Their defaults were entered by the Clerk who immediately, himself, entered judgment against the defendants for the amount prayed for in the complaint, including therein the sum of $500.00 as attorney's fees. Certain of these parties moved to set aside this judgment, the motion was granted, and an appeal was taken by the plaintiff from the order thus made.

The material portions of Section 585, Subdivisions 1 and 2, California Code of Civil Procedure, as quoted by the Court, read:

1. "In an action arising upon contract for the recovery of money or damages only, if no answer has been filed * * * the clerk, upon application of the plaintiff, must enter the default of the defendant, and immediately thereafter enter judgment for the amount demanded in the prayer of the complaint, including the costs. * * *".

2. "Subdivision 2 of said section provides that:

In other actions, if the defendant has been personally served and no answer has been filed * * * the clerk may enter the default of the defendant; and thereafter the plaintiff may apply to the court for the relief demanded in the complaint."

The question was whether the action upon the note as regards the claim of attorney's fees, was such an action as brought it within the purview of the provisions of subdivision No. 1 or subdivision No. 2, supra, i. e., what the authority of the Clerk of Court was on default to enter a judgment in the action including reasonable attorney's fees.

Affirming the action of the Court below in vacating the judgment, the nature of the Clerk's authority, and his power to act in such case was reviewed thus:

"It is, of course, well settled that the authority given the clerk to enter judgment after default is, when properly exercised, a ministerial one solely. His power must be conferred by the statute, and in exercising it he must conform strictly to the provisions of the section or any judgment entered by him will be void. Kelly v. Van Austin, 17 Cal. 564; Wharton v. Harlan, 68 Cal. 425, 9 Pac. 727; Crossman v. Vivienda Water Co., 136 Cal. 574, 69 Pac. 220, Farrar v. Steenbergh, 159 Pac. 707. * * *

While it is true that the language used in subdivision 1 of the section is quite broad and authorizes the clerk

after default to enter up judgment in all actions 'arising upon contract for the recovery of money or damages only,' still what is meant by that language is that the contract to warrant the exercise of such authority by the clerk alone in entering judgment must by its terms as set forth in the complaint call for the payment of some fixed and definite sum in money or damages. In the nature of things this provision of the Code must be construed to apply to contracts which provide for some definite fixed amount of damages ascertainable from the contract sued on or from the terms of which a certain computation or calculation may be made by the clerk. As the duty of the clerk is purely ministerial, his power could only be exercised and properly apply in the case of such a contract, and must be limited thereto. If the contract declared on is indefinite and uncertain in the amount of damages which plaintiff is entitled to recover on it, and in the nature of things must be ascertained and fixed, the matter then is necessarily one for judicial determination by the court, and not for ministerial action by the clerk. Hence it must appear from the contract sued on, either from its terms as set forth in the complaint or from the allegations in the latter respecting it, that a definite or liquidated sum of money is to be paid as damages; an amount which is definitely fixed by the contract sued on or which from the allegations of the complaint may be ascertained by mere computation or mathematical computation of the clerk. When this is the situation the clerk in entering judgment acts simply in a ministerial capacity. * * * While the complaint alleges that $500 is a reasonable attorney's fee, it does not lie with the plaintiff to determine what shall constitute a reasonable attorney's fee, nor can his counsel bringing the action fix the amount thereof for purposes of a judgment by alleging in the complaint a sum which he may think would be reasonable. Its reasonableness could not be ascertained by computation, because no data has been furnished in the note or complaint for doing so. It must remain uncertain and indefinite until resolved into a certain sum by some one authorized to do so. Certainly it is not a ministerial duty for the clerk, but is one pre-eminently judicial to be performed by a court.

It is argued that the failure of defendants to answer was an admission by them that the sum alleged was a reasonable attorney's fee. But this is not the legal consequence which follows from such default as far as entering a judgment by the clerk is involved. The default is an admission of some things. In an action of this character, for instance, it admits that by the terms of the note sued on the defendants are liable, in addition to principal and interest, for the payment of some amount as a reasonable attorney's fee, and that the plaintiff is entitled to have a recovery therefor. But this is as far as the default constitutes an admission. It simply admits that something is due as a reasonable amount for attorney's fees, but not that the amount alleged in the complaint constitutes it. This, under the contract and under the law, is a matter peculiarly for judicial determination which a defaulting defendant knows or is presumed to know, and while he admits the breach of the contract by his default and his liability for general damages, in those amounts which can be determined by exact computation from the note or the complaint setting forth its terms, yet as to the recovery of reasonable attorney's fees, which are special damages authorized to be recovered in addition to the general damage, his default only admits he is liable in some sum, but only in such a sum as may be determined after his default by the judgment of the court itself."

Concerning this case both the California District Court of Appeals and the Supreme Court of that State recently remarked that the meaning of the above quoted provisions of Section 585, California Code of Civil Procedure, was therein "given more thorough consideration than in any other case to which our attention has been called". Lynch v. Bencini, 104 Pac 2d (Cal. App.) 823; Lynch v. Bencini, 17 Cal. 2d 521, 110 Pac. 2d 662.

The State of Oregon has a statute similar to that of Section 585 of the California Code of Civil Procedure, supra, and concerning it, in affirming a judgment annulling the entry of a judgment by Clerk of Court for "$367.00 as damages for an alleged breach of agree-

ment" in Hodgdon v. Goodspeed, 60 Ore. 118 Pac. 167, the Court said:

"In entering a judgment upon default, the clerk acts in a ministerial capacity, exercises no judicial functions, and must conform strictly to the provisions of the statute, or his proceedings will be without any binding force. Kelly v. Van Austin, 17 Cal. 564.

When the clerk is authorized to enter judgment upon default, but in the employment of the power conferred, makes a mistake as to the amount due plaintiff, the judgment is not void, but erroneous; but, where he enters a judgment which is wholly unauthorized, the judgment is void. Bond v. Pacheco, 30 Cal. 530.

When a void judgment is called to the attention of a court in which it was entered, it is incumbent upon that tribunal to purge its records of the nullity by canceling the entry."

Likewise, the State of Idaho has adopted a statute similar to that of California and considered in the Landwehr case, supra. In Tripp, et al. v. Dotson, et al., 51 Ida. 200, 4 Pac. 2d 349, the Court affirmed a judgment in favor of the plaintiffs in a suit to enjoin the enforcement of a clerk's default judgment for a pleaded amount of "reasonable attorney's fees" in accord with the terms of a certain promissory note executed by them and held and theretofore placed in suit by defendants. This clerk's judgment was for "the sum of $4757.37, with interest thereon in the sum of $3240 and $10 costs of this action and $450 as attorney's fees making a total of $8457.37". In the course of the opinion filed this was said:

"In actions 'arising upon contract for the recovery of money or damages only,' the clerk has jurisdiction to enter the judgment. In all other actions, his jurisdiction ends with the entry of the default; the plaintiff must thereafter apply to the court 'for the relief demanded in the complaint.'

It is therefore obvious that, in the prescribed instance, the clerk has jurisdiction to enter the judgment or he has not. If the pleadings call for a judgment including something other than money or liquidated damages, he has no jurisdiction whatever; he is without authority to enter judgment piecemeal, including some integers and excluding others. Such discrimination would require the exercise of something more than a purely ministerial function, all that the statute contemplates. The rule was directly announced in Gustin v. Byam, 41 Idaho, 538, 544, 240 P. 600, 603. In that case the court said: 'What was a reasonable attorney fee was a question of fact for judicial determination by the court under subdivision 2 of the statute, and outside the purely ministerial authority conferred upon the clerk by subdivision 1. The judgment entered was in excess of the clerk's authority under the statute, and therefore was void.' "

See also the cited case of Gustin v. Byam, referred to in the Court's discussion of the matter.

Again we find a statute closely akin to the California law above reviewed in Section 104-28-1, Rev. Stats. of Utah, 1933. In First National Bank of Coalville v. Boley, 90 Utah 341, 61 Pac. 2d 621, a mortgage foreclosure case, the Court, in considering the authority of the Clerk to enter a default judgment under the statute, used this language.

"104-28-1, R. S. 1933, which authorizes the clerk to enter judgment in certain cases does not give him authority to enter a judgment in foreclosure proceedings. The clerk in entering a judgment is limited to the authority expressly conferred upon him by statute. 3 Bancroft's Code Prac. & Rem. § 1810, p. 2287, and cases cited.

The amount of attorney's fees required a judicial determination which could only be exercised by the court. 3 Bancroft's Code Prac. & Rem., § 1809, p 2375, and cases cited.

The clerk had no power or authority whatsoever to enter the judgment which he did, and the same is void.

That the judgment is a nullity is conceded by the attorneys for the plaintiff. Had defendants made an application, as they should have done, to the district court of Morgan county to vacate and set aside that judgment, no doubt relief would have been granted."

The case of Soliri v. Fasso, 56 Mont. 400, 185 Pac. 322, was one wherein action had been brought by the plaintiff to recover a balance due from one Margaret Fasso, one of the defendants by reason of plaintiff's performance, of a house repair contract and for the foreclosure of a mechanic's lien asserted to have been duly perfected upon the house and the lot on which it stood. Margaret Fasso, though process was duly served upon her, failed to appear. The Clerk, at the instance of the plaintiff's attorney, entered her default and forthwith a money judgment against her and for costs; the judgment made no reference to the lien pleaded in the complaint. On motion the Court set aside this judgment basing its ruling upon the grounds that the action being for the foreclosure of a lien, the Clerk was without authority to enter the judgment; and that the judgment was a mere nullity and could be stricken from the records at any time on motion of either of the parties or of the Court's own volition. Concerning the trial Court's ruling on this point the appellate Court said:

"An action for the foreclosure of a lien is not an action on contract for the recovery of money or damages only. Conceding that under the authority of Missoula Lumber Co. v. O'Donnell, 24 Mont. 65, 60 Pac. 594, 991, and other decisions of this court, a lien claimant may waive his lien and take judgment in the proper cases for money only, the entry of judgment by the clerk alone, without an order of the court, might in effect amount to a dismissal of the action as to the remaining defendants, without any direction from plaintiff, or might at least constitute a bar to further proceedings therein. The rendition of a proper judgment under these circumstances required, not the performance of a mere

ministerial function, but judicial action. However, the language of the statute is clear, and, in actions where something other than the relief provided for' therein is demanded the clerk is without jurisdiction to enter judgment. State ex rel. Resser v. Dist. Court, 53 Mont. 235, 163 Pac. 1149.

The judgment entered, being beyond the clerk's jurisdiction, was a mere nullity and may be set aside. State ex rel. Smith v. District Court, 55 Mont. 602, 179 Pac. 831.

The statute involved (Sec. 6719, Subdivision 1, Revised Codes of Montana) read:

"In an action arising upon contract for the recovery of money or damages only, if no answer, demurrer, * * * has been filed with the clerk, * * * the clerk, upon application of the plaintiff, must enter the default of the defendant, and immediately thereafter enter judgment for the amount specified in the complaint, etc."

is evidently patterned very much in the mold of the California Act first mentioned.

It is reasonably apparent from the views expressed by the authorities reviewed above that statutes authorizing Clerks to enter judgments in certain cases should be strictly construed and unless the letter of the law is complied with, as regards the power granted, the action of such officials must be treated as void. The Supreme Court of Florida, in Kroier v. Kroier, 95 Fla. 865, 116 So. 753, has said that:

"Section 2619, Rev. Gen. Stats. of 1920, confers authority upon the clerk of the circuit court to enter a default against a defendant for failure to appear, or to plead or demur, within the time required by law, and under section 2622 the clerk may proceed to enter final judgment in certain cases. The authority and jurisdiction thus conferred upon clerks is purely statutory and must be strictly construed. (Cases cited.)

We have already indicated that the first sentence of Section 89-1207, supra, was intended originally to vest

power in the Court alone to enter default judgments in the cases specified. The Clerk of the Court is not mentioned in that sentence at all. It is the second sentence of the Act which vest power in the Clerk to enter a judgment and the only judgment he can enter is "for the amount with interest specified in plaintiff's verified original petition together with the costs of the action". No authority is there given to adjudicate the priority of liens of various kinds or to fasten the lien of a judgment upon the interest of a defendant in an oil lease, or to foreclose a plaintiff's asserted lien upon personal property or to order the property and the assigned interest of a defendant in such oil lease sold to satisfy the judgment; in short, no authority to do any of these things which were attempted to be done by the Clerk's judgment of July 29, 1943, as described above.

Under the decisions hereinbefore reviewed we are obliged to conclude that the "amount" for which the Clerk may enter judgment can only refer to instances of an "account or written instrument or other contract express or implied for the payment of money only" where the plaintiff's "verified original petition" is such that mere inspection thereof or computation from the data supplied by that pleading enables the Clerk to enter a judgment for a fixed sum with costs. As said by the Supreme Court of California, in the Landwehr case, and as noted above, this should be an "amount" which, "from the allegations of the complaint may be ascertained by mere computation or mathematical computation of the Clerk. When this is the situation the Clerk, when entering judgment, acts simply in a ministerial capacity". Whenever it appears that judicial action is necessary to the proper draught or entry of a judgment the Clerk is necessarily without power to act.

The action of the District Court of Big Horn County in vacating the Clerk's judgment, aforesaid, was ac-

cordingly correct and it should be affirmed in that particular.

It is asserted that the Court erred in not striking defendant's answer because it was filed out of time. We have seen that the judgment entered by the Clerk was a nullity and was properly vacated by the Court. The service of process on each of the defendants was constructive only. True, the Court had refused to quash that service but that imposed no duty on the part of the defendants personally to answer in the cause. It was not ruled that they had personally appeared in the action. Notwithstanding this the default judgment hereinbefore discussed was obtained from the Clerk by the plaintiff. Again, as pointed out in the Bertagnolli case, supra, the Court, in the exercise of a sound discretion may refuse to strike a pleading from the files and consider it as filed in time even if we were to assume that defendant Van Etta's answer was filed out of time.

Our attention is directed to Ch. 76, Laws of Wyo., 1939; that act amended the previous law (Sec. 89-1043, W. R. S. 1931), relative to the statutory time for filing pleadings by making certain additions thereto so that the statute, as it now stands, reads:

"The answer, demurrer, *motion or special appearance* by the defendant shall be filed on or before the third Saturday, and the reply, demurrer *or motion* by the plaintiff on or before the fifth Saturday after the return day of the summons or service by publication; and the answer, demurrer *or motion* of a defendant to a cross petition shall be filed on or before the third Saturday and the reply, demurrer *or motion* on or before the fifth Saturday after the cross petition is filed. *The filing of a motion or special appearance within the time above specified shall prevent the party filing the same from being in default; provided that when such*

*motion or special appearance is filed and overruled, the party filing the same shall have ten days thereafter to plead over unless otherwise ordered by the Court.*

We have italicized the added verbiage so as to indicate the alterations.

Under the circumstances presented by the record before us this statute has no application here that we are able to perceive. The special appearances by the defendant Van Etta were made solely for the purpose of testing the validity of the service made in the case which was constructive only and upon non-residents of the state. When the Court ruled adversely to the request of these special appearances and held that this service was good the effect of the ruling was simply to establish the validity of that service, i. e., constructive only, so far as the District Court of Big Horn County was concerned. It certainly did not transform the service into one personal in character and upon which a personal judgment could be entered either by the Clerk or by the Court itself. Whether the ruling on these special appearances was right or wrong is another question and upon which it is not necessary to pass at this time.

All things considered, we see no abuse of discretion on the part of the trial Judge in declining to strike the answer in question.

The order appealed from should be and it is in all things affirmed.

*Affirmed.*

BLUME, C. J., concurs, and KIMBALL, J., concurs in the result.